# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TROY R. SELDON and BELINDA MOORE, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | NO. 07-04480 |
| v. | : | |
| | : | |
| HOME LOAN SERVICES, INC., D/B/A FIRST FRANKLIN LOAN SERVICES and FIRST FRANKLIN FINANCIAL CORP., D/B/A FIRST FRANKLIN LOAN SERVICES, | : | |
| Defendants. | : | |

## Memorandum

YOHN, J.                                                                  August 4, 2009

Plaintiffs, Troy Seldon and Belinda Moore, filed this lawsuit against defendants Home

Loan Services, Inc. ("Home Loan"), doing business as First Franklin Loan Services, and First

Franklin Financial Corporation ("First Franklin"), also doing business as First Franklin Loan

Services, for violations of federal and state law arising out of their home mortgage loan.  In their

third amended complaint ("TAC"), plaintiffs bring a series of claims against both defendants: (1)

a claim for rescission of the loan and recoupment based on improper disclosures pursuant to the

Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*; (2) a claim for fee-splitting under the

Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2602, *et seq.*; (3) a claim for

unlawful debt collection practices pursuant to the Pennsylvania Fair Credit Extension Uniformity

Act ("FCEUA"), 73 Pa. Stat. Ann. §§ 2270.1, *et seq.*; (4) a claim for fraudulent and deceptive

conduct pursuant to the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73

Pa. Stat. Ann. §§ 201-1, *et seq.*; and (5) a common law claim for fraud based on defendants'

alleged misrepresentations.

Presently before the court is defendants' motion to dismiss the TAC for failure to state a claim for which the court can grant relief pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the court will grant in part and deny in part defendants' motion.

## I.      Facts and Procedural Background

Plaintiffs' TAC arises out of defendants' alleged "predatory lending" in relation to plaintiffs' home mortgage loan and a modification of the terms of its repayment.  (TAC ¶¶ 1, 17, 26.)  Presuming the truth of all factual allegations in the complaint, as required for the purposes of this motion, the court gleans the following facts.

On November 3, 2004, plaintiffs closed on a loan for their residence, 6811 Grebe Place in Philadelphia, and agreed to a mortgage and note, with First Franklin as the lender and Home Loan as the servicer of the loan.  (*Id.* ¶¶ 12, 13, 17.)  According to plaintiffs, defendants told them that the loan would benefit or benefitted plaintiffs, that "their fees and costs were usual and customary" fees, that the finance charge and amount financed included "fees and costs," that "their loans were conventional or fixed," and that plaintiffs owed "certain amounts."  (*Id.* ¶ 51.) Plaintiffs allege that defendants' above statements turned out to be false.  (*Id.*)  Plaintiffs further claim that Home Loan bought the loan after the November 4 closing, but failed its duty to service the loan properly.  (*Id.* ¶¶ 42, 43.)  Home Loan failed to "record assignments [timely], attribute loan payments [to] principal and interest . . ., calculate monthly and pay-off payment[s] [sic] pursuant to the terms of the [l]oan, assess bona fide and reasonable charges . . ., and submit notices [of these charges] to [p]laintiffs."  (*Id.*)

Sometime in 2006, plaintiffs fell behind in making their mortgage payments due in large part to Troy Seldon's loss of employment.  (*Id.* ¶ 18.)  Plaintiffs contacted First Franklin and the

parties arranged an alternative repayment plan intended to bring plaintiffs current on their

mortgage.  (*Id.* ¶¶ 19, 26.)  Plaintiffs allege that in communications concerning this plan,

defendants made material misrepresentations to plaintiffs concerning who had authority over the

loan and the nature of repayment plan.  (*Id.* ¶¶ 27, 28, 30, 32, 33.)

        During the time plaintiffs were negotiating the repayment plan, First Franklin allegedly

became a part of Home Loan either by a merger or Home Loan's acquisition of First Franklin.

(*Id.* ¶ 20.)  As a result, First Franklin and Home Loan used the same phone number and mailing

address.  (*Id.* ¶ 20.)  Moreover, the defendants "acted interchangeably" in dealing with plaintiffs.

(*Id.* ¶ 22.)  Plaintiffs claim that each time they called defendants concerning their loan they

"never spoke with the same individual" and were "passed to different departments."  (*Id.* ¶¶ 23-

24.)  As a result, plaintiffs claim they received "conflicting information" and suffered confusion.

(*Id.* ¶¶ 21, 25.)

        On top of this confusion, plaintiffs allege that defendants deceived them about the nature

of the repayment plan.  Defendants told plaintiffs that under the repayment plan plaintiffs'

monthly payments would rise from $600.00 to $700.00.  (*Id.* ¶¶ 28, 30.)  Defendants also told

plaintiffs that if plaintiffs made all required payments under the repayment plan, the repayment

plan would end in April 2007 and plaintiffs' required monthly payment would return to $600.00

per month.  (*Id.* ¶¶ 27-28.)

        Plaintiffs allege that none of defendants' characterizations of the repayment plan became

reality.  Defendants sent statements to plaintiffs asking for "varying monthly amounts" of

payment, including amounts of $800.00 and $900.00.  (*Id.* ¶¶ 32-33.)  Additionally, after making

all of these varying requested payments under the repayment plan, plaintiffs contacted Home

Loan in April 2007 to inquire about terminating the repayment plan.  (*Id.* ¶¶ 35-36.)  Despite plaintiffs' alleged compliance with, and completion of, the repayment plan, a representative of Home Loan stated that the loan was not current and that plaintiffs required monthly payment would now be $900.00.  (*Id.* ¶¶ 36, 39.)  The representative also "inquired about the condition of Plaintiffs' house," (*id.* ¶ 37), and stated that Home Loan "was only interested in taking Plaintiffs' home," (*id.* ¶ 38).  At some point, Home Loan imposed unspecified late fees, attorney fees, taxes and other loan charges "without proper disclosure, justification, and/or explanation."  (*Id.* ¶ 40.)  As a result, plaintiffs took out a second mortgage to pay these charges.  (*Id.*)  Plaintiffs allege that sometime later they determined that at the closing of the original loan they incurred closing charges that "were neither bona fide nor reasonable" and received defective disclosures.  (*Id.* ¶ 41.)

Plaintiffs allege defendants collectively caused a series of injuries: emotional distress and embarrassment; damage to credit rating; financial loss, including loss of opportunity, equity, or both; possible or actual loss of their premises; attorney fees and costs; and "other injuries to be determined in discovery or at trial, including aggravation of a preexisting condition(s)."  (*Id.* ¶ 45.)

Plaintiffs filed their initial complaint on October 10, 2007.  In response to a motion to dismiss and a motion for a more definite statement from defendants Home Loan and First Franklin, plaintiffs filed an amended complaint on January 17, 2008.  The amended complaint named only Home Loan as a defendant; as a result, the clerk terminated First Franklin as a party. Both original defendants, nonetheless, answered that amended complaint.  Upon this court's order granting leave to amend, plaintiffs filed their second amended complaint on April 1, 2008,

naming as defendants Home Loan and three additional parties—AMC Funding Corporation ("AMC"), its president Thomas Mizgerd, and Wells Fargo Bank, N.A.  After answering the complaint, Home Loan and First Franklin filed a motion for judgment on the pleadings on May 13, 2008.  On September 5, 2008, defendants Mizgerd and AMC filed a motion to dismiss for lack of appropriate service pursuant to Rule 12(b)(5).

Following plaintiffs' responses to both motions, plaintiffs' cross-motion for judgment on the pleadings, and oral argument on all motions, the court granted judgment on the pleadings for Home Loan and First Franklin, without prejudice to the right of plaintiffs to file a motion for permission to file a third amended complaint.  Order, *Seldon v. Home Loan Servs., Inc.*, No. 07cv04480 (E.D. Pa. Dec. 3, 2008).  The court also granted the motion to dismiss from Mizgerd and AMC and dismissed Wells Fargo, N.A. due to plaintiffs' failure to serve the complaint in a timely manner.  *Id.*  On December 22, 2008, plaintiffs filed a motion for leave to file a third amended complaint and a motion for enlargement of time to serve Mizgerd, AMC, and Wells Fargo, N.A., but two days later withdrew their claims against Mizgerd and AMC.  The court denied plaintiffs' motion for enlargement of time, but granted leave to file an amended complaint against First Franklin and Home Loan.  Sixteen months after filing their original complaint and after ample opportunity to conduct discovery, plaintiffs filed a third amended complaint on February 10, 2009.[1]  Defendants filed the motion to dismiss the third amended complaint on

---

[1]  Defendants point out that this third amended complaint as filed does not match the proposed third amended complaint attached to plaintiffs' motion for leave to amend complaint. That proposed amended complaint included Wells Fargo, which the court dismissed in its order granting leave to amend.  Naturally, plaintiffs' third amended complaint as filed omits Wells Fargo, but also contains other, more substantive alterations to the proposed amended complaint, including a list of finance charges which plaintiffs claim violate TILA.  (*Id.* ¶ 58.)  As defendants correctly note, the present complaint represents plaintiffs' "<u>fifth</u> attempt to state cognizable

February 24, 2009.  Plaintiffs responded and defendants replied.

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  "[U]nder Rule 12(b)(6) the defendant has the burden of showing no claim has been stated."  *Kehr Packages, Inc. v. Fidelcor*, 926 F.2d 1406, 1409 (3d Cir. 1991).  When evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and any reasonable inferences that may be drawn therefrom must be viewed in the light most favorable to the plaintiff.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  The complaint must rest on factual allegations, not on unsupported legal conclusions.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of [a] motion to dismiss [a court] must take all the factual allegations in the complaint as true, [the court is] not bound to accept as true a legal conclusion couched as a factual allegation."); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (stating that "court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss").

The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Phillips*, 515 F.3d at 234 (reasoning that notice pleading standard encompasses concept of a

claims" against defendants.  (Mem. of Law in  Supp. of Mot. of Defs. Home Loan Servs., Inc. and First Franklin Fin. Corp. to Dismiss Pls.' Third Am. Compl. 1 (emphasis in original).)

"showing," which "requires only notice of a claim and its grounds").  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citations and alterations omitted); *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (citations omitted); *see also Phillips*, 515 F.3d at 234-35. A plaintiff must show a "plausible" or "reasonably founded hope" of success.  *Twombly*, 550 U.S. at 556, 559 (internal quotation marks and citations omitted).  Nevertheless, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

## III.   Discussion

Defendants argue that the court must dismiss this third amended complaint because it is untimely and lacks the essential factual allegations to set forth a claim upon which this court can grant plaintiffs relief.  Plaintiffs disagree and also contend that because defendants answered a previous complaint, they are barred from moving for dismissal.  Accordingly, the court will address parties' procedural argument before proceeding to the sufficiency of plaintiffs' claims.

### A.   Procedural Issues

Defendants argue that the court need not consider plaintiffs' untimely response to

defendants' motion and should grant the motion as unopposed. Plaintiffs contend that because defendants answered two previous complaints, defendants "should be estopped" from bringing a motion to dismiss. (Mem. Law Supp. Pls.' Resp. Defs. Home Loan Servs. & First Franklin Fin. Corp.'s Mot. Dismiss ("Pls.' Resp.") 11.)

As to the timeliness of plaintiffs' response, the rules of this court direct that "any party opposing [a] motion shall serve a brief in opposition . . . within fourteen (14) days after service of the motion and supporting brief." E.D. Pa. Local R. Civ. P. 7.1(c) (2008). Because defendants served their motion to dismiss via electronic filing, plaintiffs had an additional three days to respond. *See* E.D. Pa. Local R. Civ. P. 5.1.2 (incorporating Procedural Order on Electronic Case Filing, which provides under § 8(e) that "service by electronic means [is entitled to] adding [of] three (3) days to the prescribed period to respond"). Defendants served their motion on plaintiffs on February 24, 2009 and plaintiffs responded on March 16, 2009, three days past the deadline. The court did not dismiss the complaint for lack of a response to the motion, as it could have, in the interim three days. Rather than now declare the response untimely and subject defendants to the additional cost of responding to a potential plaintiffs' motion for an enlargement of time to file a response, the court will accept the response despite its unexplained untimeliness.

Plaintiffs argue that because defendants answered two previous complaints, which lacked the specificity of the presently filed third amended complaint, defendants are estopped from arguing that the complaint fails the *Twombly* standard due to its lack of specificity. Plaintiffs' argument misses the mark. The court's standard for reviewing a motion to dismiss pertains to whether the pending complaint sets forth sufficient detail to establish a legal claim to relief, in addition to sufficient detail to permit a responsive pleading. *See Phillips*, 515 F.3d at 235 (noting

that claimant must provide both "fair notice" of the claim and "grounds on which the claim rests" (citing *Twombly*, 550 U.S. at 556 n.3)).  Thus, plaintiffs' argument fails.[2]

**B.       Substantive Claims**

In moving for dismissal, defendants argue that plaintiffs' complaint fails to support any of its claims with sufficient factual allegations to meet the *Twombly* standard.  For each of their claims, plaintiffs point to selected allegations that, they argue, set forth a claim for which the court can grant relief.  In light of the *Twombly* standard, the court will address each of plaintiffs' remaining claims in the order set forth in the complaint.[3]

**1.       Claims under the Truth in Lending Act**

In their first claim, plaintiffs allege that under the TILA and its related regulations, they have the right to rescind the loan and receive recoupment from defendants because defendants failed to provide required material disclosures in that the disclosures plaintiffs received included unreasonable fees making them inaccurate.  Defendants maintain that plaintiffs' complaint lacks sufficient factual allegations to set forth a right to rescission under the TILA's stringent

_____

[2] Plaintiffs devote a significant portion of their brief to arguing that they permissibly filed a third amended complaint that differed from the proposed complaint attached to their motion for leave to amend.  It appears defendants point out the differences between the proposed third amended complaint and the one filed to highlight plaintiffs' multiple attempts to set forth a right to relief.  Because plaintiffs filed a timely third amended complaint pursuant to this court's order of January 27, 2009, and because defendants do not contest whether the third amended complaint complies with the order granting leave to amend, plaintiffs make a moot argument.

[3] In their brief in opposition to defendants' motion to dismiss, plaintiffs voluntarily withdrew their claim under the RESPA.  (Pls.' Resp. 4.)  Because plaintiffs have not requested leave to amend this withdrawn claim after already having presented it five times to the court, the court will dismiss the withdrawn claim with prejudice.  *See* Fed. R. Civ. P. 41(a)(2) (2008) (permitting withdrawal of claim after defendant has answered "at the plaintiff's request only by court order or terms that the court considers proper").

requirements.

The TILA is intended to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  15 U.S.C. § 1601(a).  Further, "[b]ecause the TILA is a remedial consumer protection statute, . . . it 'should be construed liberally in favor of the consumer.'"  *Rossman v. Fleet Bank (R.I.) Nat'l Ass'n*, 280 F.3d 384, 390 (3d Cir. 2002) (citation omitted).  To achieve this end, the statute "requires creditors to provide borrowers with clear and accurate disclosures of terms," *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998), and imposes strict liability on creditors who fail this mandate, *see* 15 U.S.C. § 1640(a) ("[A]ny creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person.").  The TILA also authorizes the Federal Reserve Board to promulgate regulations to implement the statute, which the Board did with Regulation Z.  15 U.S.C. § 1604; 12 C.F.R. §§ 226.1 *et seq.* (2008).

Together, the TILA and Regulation Z require lenders to make a series of material disclosures[4] to borrowers for transactions that do not involve a continuing line of credit, such as plaintiffs' loan with defendants.  *See* 15 U.S.C. § 1638 (listing required disclosures); 12 C.F.R. §§ 226.17, 226.18 (requiring disclosures).  Among the required material disclosures, the lender must provide the finance charge, the amount financed, and the annual percentage rate.  15 U.S.C.

---

[4] "The term 'material disclosures' means the disclosure, as required by this subchapter, of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) of this title."  15 U.S.C. § 1602(u).

§ 1638(a); *see also* 12 C.F.R. § 226.18 (requiring disclosure of amount financed, finance charge, and annual percentage rate).  For loans secured by an interest in a borrower's "principal dwelling," such as plaintiffs' loan with defendants,[5] if the lender fails to satisfy the "delivery of . . . a statement containing the material disclosures," the borrower has a right to rescind the loan transaction.  15 U.S.C. § 1635(a).

"Because the purpose of the TILA is to assure meaningful disclosures, 'the issuer must not only disclose the required terms, it must do so accurately.'"  *Roberts v. Fleet Bank (R.I.)*, 342 F.3d 260, 266 (3d Cir. 2003) (quoting *Rossman*, 280 F.3d at 390-91); *Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir. 1980) ("A misleading disclosure is as much a violation of TILA as a failure to disclose at all.").  Consequently, an inaccurate disclosure, like no disclosure at all, gives rise to a right to rescind.  For purposes of the right to rescind, "the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate . . . if the disclosed finance charge: (i) is understated by no more than 1 percent of the face amount of the note or $100, whichever is greater; or (ii) is greater than the amount required to be disclosed."  12 C.F.R. § 226.23(g)(2)(i)-(ii).  The parties dispute whether plaintiffs provide sufficient factual allegations for a claim of rescission based on improper disclosures where defendants' unreasonable and undisclosed fees allegedly made the following disclosures inaccurate: the finance charge, the amount financed, and the annual

_____

[5]  Plaintiffs do not specifically allege that the loan was secured by an interest in their principal dwelling, but it appears the parties do not dispute this fact.  As well, plaintiffs' address on the complaint matches the address for the property securing the loan at issue.  (TAC 1, Exs. A-C.)

percentage rate.[6]

### a.    Finance charge

The "finance charge" refers to the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."  15 U.S.C. § 1605(a).  Under Regulation Z, "finance charge" refers to the "cost of consumer credit as a dollar amount[, including] any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."  12 C.F.R.§ 226.4(a).  Accordingly, the finance charge must include charges for: interest; service, transaction, activity, and carrying charges; points, loan fees, assumption fees, finder's fees, and similar charges; appraisal, investigation, and credit report fees; mortgage insurance premium; and property insurance premium.  *Id.* § 226.4(b)(1)-(7).  For "a transaction secured by real property," some of these fees, if they are reasonable and bona fide, would not qualify as fees required to be included in the finance charge and thus

---

[6] The parties do not dispute the timeliness of plaintiffs' exercise of the right to rescind. *See* 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property[, where disclosures are improper]."); 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation.").  Defendants do not contest the sufficiency of plaintiffs' notice of the exercise of the right to rescind.  *See* 15 U.S.C. § 1635(a) (requiring borrower to notify creditor of exercise of right to rescind); 12 C.F.R. § 226.23(a)(2) (requiring "consumer [to] notify the creditor of the rescission by mail, telegram or other means of written communication").  Neither party disputes that the right to rescind applies to the transaction at issue.  Plaintiffs call the transaction a "residential mortgage transaction," but it appears from the settlement statement, (TAC Ex. B), to be a refinancing agreement.  *See* 15 U.S.C. § 1635(e)(1) (providing that right to rescind does not apply to residential mortgage transaction); 15 U.S.C. § 1602(w) (defining "residential mortgage transaction" as one secured by an interest in "the consumer's dwelling to finance the *acquisition* . . . of such dwelling" (emphasis added)).

disclosed.[7]  *Id.* § 226.4(c)(7).  Conversely, if these fees are unreasonable or not bona fide, a lender must disclose them; otherwise, the lender has not properly disclosed the finance charge. *Id.*

Here, after five attempts, plaintiffs have not set forth sufficient factual allegations that defendants failed to disclose the finance charge by not disclosing fees at all or charging unreasonable fees.  Plaintiffs provide no factual allegations as to how defendants failed to disclose at all any of the fees listed in the complaint, and loan documents suggest defendants did disclose the fees at issue.  Plaintiffs cite and attach to the complaint the loan's HUD-1A form, (TAC Ex. B), which contains all the allegedly undisclosed fees listed in the complaint.  Plaintiffs signed this form and presumably read through the list of fees associated with their loan at the time of settlement.  Plaintiffs make no allegations as to how these fees differed from the amounts disclosed to them prior to settlement.  Moreover, the Truth-in-Lending Disclosure Statement for Troy Seldon, which he signed twelve days before settlement, lists a finance charge of $117,473.01.

As to the reasonableness of the fees, plaintiffs provide no allegation whatsoever as to how any of these fees qualify as unreasonable or non-bona fide, with the exception of the fee for title insurance.  For the title insurance charge, plaintiffs allege that defendants charged the basic rate, not the reissue rate, but fail to allege any facts suggesting that the reissue rate applies.  *See Ricciardi v. Ameriquest Mortgage Co.*, 164 F. App'x 221, 225-26 (3d Cir. 2006) (explaining requirements for reissue rate to apply under Pennsylvania rate structure for title insurance).  They

---

[7]  The fees include those for title insurance, title abstract, title insurance, property survey, document preparation, notary services, credit report, appraisal, inspection, and amounts paid to escrow.  12 C.F.R. § 226.4(c)(7)(i)-(v).

do not aver that they had prior title insurance or the amount of the alleged lower premium.

Finally, plaintiffs have failed to allege facts showing that the disclosed finance charge, (TAC Ex.

A), understated the actual finance charge by more than one hundred dollars or one percent

sufficient to qualify the disclosure as inaccurate and thus to give rise to a right to rescission, 12

C.F.R. § 226.23(g).  Instead, plaintiffs provide a formulaic recitation of the elements of a TILA

violation that *Twombly* specifically and categorically excludes as the basis of pleading a viable

claim.  Because the complaint contains insufficient allegations of an undisclosed or under-

disclosed finance charge or related fees, plaintiffs have failed to state a claim upon which the

court can grant relief under TILA on this basis.

> **b.**     **Amount financed and annual percentage rate**

"Amount financed" refers to "the amount of credit of which the consumer has actual use."

15 U.S.C. § 1638(a)(2)(A).  Regulation Z requires the disclosure of the amount financed, which

"is calculated by: (1) [d]etermining the principal loan amount . . . ; (2) [a]dding any other

amounts that are financed by the creditor and not part of the finance charge; and (3) [s]ubtracting

any prepaid finance charge."  12 C.F.R. § 226.18(b)(1)-(3).  The creditor must also provide a

"separate written itemization of the amount financed, including: (i) [t]he amount of any proceeds

distributed directly to the consumer; (ii) [t]he amount credited to the consumer's account with the

creditor; (iii) [a]ny amounts paid to other persons by the creditor on the consumer's behalf . . .;

and (iv) [t]he prepaid finance charge."  12 C.F.R. § 226.18(c)(1).  Rather than offer allegations

pertaining to the above requirements, plaintiffs simply allege that defendants failed to disclose

the finance charge "clearly and accurately," apparently due to undisclosed or unreasonable fees or

both.  Because plaintiffs' claim rests on a bald conclusion of law concerning defendants' alleged

-14-

failure to disclose the amount financed, plaintiffs have failed to set forth a claim of a TILA violation on this basis, as well.

A lender must also disclose "the finance charge expressed as an 'annual percentage rate," 15 U.S.C. § 1638(a)(4), and provide "a brief description [of that term] such as 'the cost of your credit as a yearly rate.'" 12 C.F.R. § 226.18(e). On the Federal Truth-in-Lending form signed by plaintiffs, the form lists the "Annual Percentage Rate" as 6.75% and describes it as "[t]he cost of your credit as a yearly rate." (TAC Ex. A.) Plaintiffs provide no additional factual allegations regarding the inaccuracy of the rate or any impropriety surrounding its disclosure. Without these allegations, plaintiffs have failed to make a plausible claim that defendants did not disclose the annual percentage rate and thus violated the TILA.

### c.    Claims against Home Loan

Defendants argue that plaintiffs cannot bring a claim against Home Loan because under the facts alleged by plaintiffs, Home Loan never served as a creditor and TILA applies only to creditors. Plaintiffs argue that when Home Loan bought First Franklin or when First Franklin became Home Loan,[8] Home Loan became an assignee of First Franklin's rights under the loan or became plaintiffs' creditor. (TAC ¶ 20.)

According to the TILA, the "term 'creditor' refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer

---

[8] There appears some confusion about the transaction between Home Loan and First Franklin. In the TAC, plaintiffs allege that Home Loan bought First Franklin and plaintiffs state the same in their brief. Plaintiffs also allege that First Franklin became Home Loan, but in their brief plaintiffs state, somewhat inconsistently, that Home loan "bought or otherwise became First Franklin." Given that but for this one statement, plaintiffs consistently refer to Home Loan as the purchasing or surviving company, not First Franklin, the court will presume that Home Loan purchased First Franklin or that the companies merged with Home Loan as the new entity.

credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, *and* (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . . . ." 15 U.S.C. § 1602(f) (emphasis added).  The TILA does provide, however, that "any civil action for a violation of the [TILA] . . . against a creditor may be maintained against any assignee of such creditor."  15 U.S.C. § 1641(a).  For assignee liability to attach "with respect to a consumer credit transaction secured by real property," two conditions must exist: "(A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and (B) the assignment to the assignee was voluntary."  15 U.S.C. § 1641(e)(1)(A)-(B).  A "violation is apparent on the face of the disclosure statement if--(A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or (B) the disclosure statement does not use the terms or format required to be used by this subchapter."  *Id.* § 1641(e)(2)(A)-(B).

Here, although plaintiffs allege that First Franklin "regularly extends consumer credit," and thus qualifies as a creditor under TILA, they allege nothing of the sort about Home Loan. Nonetheless, plaintiffs allege that at some point, Home Loan purchased plaintiffs' loan from First Franklin.  (TAC ¶ 42.)  Thus for their claims against Home Loan, plaintiffs appear to rely on assignee liability under TILA.  Alternatively, plaintiffs contend that Home Loan's liability arises out of Home Loan's acquisition of, or merger with, First Franklin.

As to assignee liability, plaintiffs make no allegations as to whether the TILA violations alleged were apparent on the face of the disclosure statements.  Moreover, as explained above,

-16-

the loan documents attached to the TAC do not reveal any apparent TILA violations.  Because

plaintiffs fail to allege an essential component to an assignee liability claim, plaintiffs have not

sufficiently pleaded a TILA claim against Home Loan on the basis of assignee liability.

As to liability arising out of a merger or acquisition involving defendants, plaintiffs allege

nothing further about how Home Loan bought First Franklin or how First Franklin became Home

Loan.  Plaintiffs allege no specific facts about the nature of or terms of this alleged merger or

acquisition.  In particular, plaintiffs fail to allege whether in acquiring First Franklin, Home Loan

purchased First Franklin's assets with or without any and all incumbent liabilities, including any

TILA violations.  *See Wile v. Green Tree Servicing, LLC*, No. Civ. A. 04-2866, 2004 WL

2644390, at \*\*2-3 (E.D. Pa. Nov. 22, 2004) (dismissing TILA claim against purchaser of

creditor's assets, including plaintiff's loan, because purchaser acquired assets "free and clear of

any claims, liabilities, and obligations," under terms of purchase as ordered in bankruptcy

proceeding).  Nevertheless, taking all reasonable inferences in plaintiff's favor, as the court must

for the purposes of this motion, Home Loan's purchase of, or merger with, First Franklin

included all of First Franklin's liabilities, and thus Home Loan became a creditor vis-a-vis

plaintiffs' loan for the purposes of the TILA.  Because plaintiffs have made plausible allegations

against Home Loan as a creditor under the TILA, plaintiffs have set forth a valid TILA claim

against Home Loan.

### d.	Right to rescind notices

Plaintiffs also claim that at closing defendants failed to provide two copies of the notice

of the right to rescind and one copy of the disclosures to each plaintiff, as required under the

TILA.  Defendants argue that plaintiffs have made a legal conclusion that lacks reference to the

facts.  Under Regulation Z, "a creditor shall deliver two copies of the notice of the right to

rescind to each consumer entitled to rescind."  12 C.F.R. § 226.23(b).  In addition, "the

disclosures shall be made to each consumer who has the right to rescind" for transactions

rescindable under § 226.23, such as plaintiffs' loan.  12 C.F.R. § 226.17(d).  Because "Congress

did not intend that creditors should escape liability for merely technical violations," *Smith v. No.*

*2 Galesburg Crown Fin. Corp.*, 615 F.2d 407, 416 (7th Cir. 1980), "[e]ven technical or minor

violations of [TILA] impose liability on the lender," *Weeden v. Auto Workers Credit Union, Inc.*,

173 F.3d 857 (Table), 1999 WL 191430, at *4 (6th Cir. 1999).  *See also Jackson v. Grant*, 890

F.2d 118, 120 (9th Cir. 1989) ("Even technical or minor violations of the TILA impose liability

on the creditor.").  Consequently, a plaintiff provides sufficient basis for a request for rescission

under the TILA with allegations that a lender did not provide the proper number of copies of

notice of right to rescind to each borrower.  *See, e.g.*, *In re Williams*, 291 B.R. 636, 644-47

(Bankr. E.D. Pa. 2003); *see also Buick v. World Savings Bank*, No. 2:07-CV-01447-MCE-KJM,

2008 WL 2413172, at *5 (E.D. Cal. June 12 ,2008) ("Because Plaintiffs have adequately alleged

that they received less than the proper number of notices prescribed by TILA . . . , [p]laintiffs

have stated a claim . . . under TILA."); *Stone v. Mehlberg*, 728 F. Supp. 1341, 1347 (W.D. Mich.

1990) (explaining that TILA is violated where lender failed to provide husband and wife, as co-

purchasers, with two copies of notice of right to rescind).

       Here, plaintiffs allege that defendants failed to provide two rescission notices and one

disclosure statement each for plaintiffs Seldon and Moore.  Despite defendants' argument to the

contrary, plaintiffs need not reference any more facts beyond this allegation to support their claim

of a violation of the TILA's procedural requirements.  Consequently, plaintiffs have sufficiently

alleged a violation of TILA that gives rise to a claim for rescission.  On this basis alone, plaintiffs may pursue their claim for rescission, but due to plaintiffs' failure to set forth a claim to relief under the TILA on any other basis, the court will dismiss the balance of Count I accordingly.

### 2.    Pennsylvania Fair Credit Extension Uniformity Act

Plaintiffs claim that defendants engaged in "unfair methods of competition and unfair and deceptive acts and practices," in violation of the FCEUA.  (TAC ¶ 69.)  Defendants contend that plaintiffs failed to allege any specific improper conduct or actions connected to the collection of the loan.  The FCEUA prohibits creditors, such as defendants, from engaging in "unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73 Pa. Stat. Ann. § 2270.2.  Specifically, the statute prohibits creditors from "using any false, deceptive or misleading representation or means" or from using "unfair or unconscionable means" to collect or attempt to collect any debt.  *Id.* at § 2270.4(b)(5)-(6).

In support of their FCEUA claim, plaintiffs allege that defendants: (a) used unfair and unconscionable collection methods; (b) gave a false impression of the character, amount, or legal status of the alleged debt; (c) used false and deceptive collection methods; and (d) made threats and took illegal action.  Contrary to defendants' argument, plaintiffs' complaint contains factual allegations in support of each of the above alleged improper actions.  Plaintiffs allege that in an attempt to collect on plaintiffs' loan, a Home Loan representative told plaintiffs that Home Loan "was only interested in taking [plaintiffs'] home."  Thus, plaintiffs allege that defendants primary goal was to obtain the home, not to collect the debt.  Because plaintiffs allege that defendants threatened to dispossess plaintiffs of their home, plaintiffs set forth a claim of an unfair and unconscionable collection method in violation of the FCEUA.  *See* 73 Pa. Stat. Ann. §

-19-

2270.4(b)(6)(vi) (prohibiting creditors from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property").

Plaintiffs allege that defendants imposed fees and other charges for the loan without explanation or justification. Defendants also allegedly represented that the repayment plan would entail a $700.00 monthly payment, but then defendants imposed higher and varying monthly payments, in contradiction to their promise to plaintiffs. Finally, according to plaintiffs, defendants promised that upon completion of the repayment plan, plaintiffs would be current on their loan and resume earlier payment amounts, but failed to honor these promises, despite plaintiffs' satisfaction of the terms of the repayment plan. In these ways, plaintiffs have alleged that defendants gave a false impression about the amount of the debt and used false and deceptive collection methods. *See* 73 Pa. Stat. Ann. § 2270.4(b)(5)(ii), (x). Defendants argue that plaintiffs have failed to allege that the repayment plan contained a guarantee of consistent payments. The court finds, however, after taking all inferences in a light most favorable to the plaintiffs, as the court must, that the repayment plan contained an implicit promise of unchanging payments to accommodate plaintiffs' financial troubles, which motivated the creation of the plan in the first place. Because plaintiffs have set forth allegations sufficient to support their claim for violations of the FCEUA, the court will deny defendants' motion to dismiss this claim.

### 3.    Pennsylvania Unfair Trade Practices Consumer Protection Law

Plaintiffs claim that defendants engaged in unfair or deceptive acts or practices in violation of various actions listed in subsections of the UTPCPL, specifically 73 Pa. Stat. Ann. § 201-2(4)(ii) (misrepresentation of source of services), (iii) (misrepresentation of association), (v) (false advertising), (ix) (false advertising), (xiv) (noncompliance with written guarantee or

-20-

warranty), (xxi) (fraudulent or deceptive conduct).  Plaintiffs also allege violations of § 201-3.1 for misrepresentation of a debt in a legal proceeding and § 201-7 for failure to provide notice of their right to rescind the loan.  Defendants argue that plaintiffs fail to allege that defendants made misrepresentations or that plaintiffs justifiably relied on alleged misrepresentations.  Defendants further argue that because plaintiffs' UTPCPL claims involve a claim of fraud, Rule 9(b)'s requirement of pleading fraud claims with particularity applies and plaintiffs' claims fail to meet that requirement.

The UTPCPL prohibits any person from engaging in "[u]nfair methods of competition and unfair or deceptive acts or practices," *id.* § 201-3, and provides a non-exhaustive list of specific forbidden acts, *id.* § 201-2(4).  The Pennsylvania Supreme Court has instructed that courts "construe[ the statute] liberally to effect its object of preventing unfair or deceptive practices."  *Creamer v. Monumental Properties Inc.*, 329 A.2d 812, 817 (Pa. 1974).  The statute further makes available a private cause of action for "[a]ny person who purchases or leases goods or services . . . and thereby suffers any ascertainable loss . . ., as a result of the use or employment by any person of a method, act or practice declared unlawful."  73 Pa. Stat. Ann. § 201-9.2(a).

Because the loss must occur "as a result" of unlawful conduct under the UTPCPL, "a private plaintiff pursuing a claim under the statute must prove justifiable reliance" on the unlawful conduct, not merely that the wrongful conduct caused plaintiff's injuries.  *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008); *see also Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) (holding that for any UTPCPL claim plaintiff must show that he (1) "justifiably relied on [a] defendant's wrongful conduct or representation" and (2) "suffered harm as a result of that reliance").  Moreover, "a plaintiff bringing an action under the UTPCPL

must prove . . . reliance and causation with respect to *all* subsections of the UTPCPL," upon

which plaintiff brings a claim.  *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d

123, 136 (3d Cir. 2005) (emphasis added) (citing *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa.

2001)).  Most of plaintiffs' individual claims under the UTPCPL suffer for lack of any sufficient

factual allegations or allegations of justifiable reliance and causation, although plaintiffs do set

forth a valid per se violation of the UTPCPL.

### a.    Claims lacking any factual support

Plaintiffs' UTPCPL claims concerning noncompliance with a written warranty and false

advertising all fail for lack of any supporting factual allegations, as *Twombly* requires.  Turning

to plaintiffs' claim under § 201-2(4)(xiv), that provision prohibits "[f]ailing to comply with the

terms of any written guarantee or warranty given to the buyer" regarding the purchase of goods or

services.  Although plaintiffs quote this section verbatim in their list of alleged UTPCPL

violations, the complaint contains no factual allegations about a warranty or its terms.  Because

plaintiffs have failed to allege this basic element of a claim under § 201-2(4)(xiv), the claim fails.

Plaintiffs also allege violations of § 201-1(4)(v) and (ix).  Section 201-2(4)(v) forbids

"[r]epresenting that goods or services have . . . characteristics, . . . benefits or quantities that they

do not have."  Section 201-2(4)(ix) prohibits "[a]dvertising goods or services with intent not to

sell them as advertised."  Pennsylvania state and federal courts have ruled that both of these

subsections apply only to claims of false advertising.  *Karlsson v. FDIC*, 942 F. Supp. 1022,

1023 (E.D. Pa. 1996), *aff'd*, 107 F.3d 862 (3d Cir. 1997); *Weinberg v. Sun Co.*, 740 A.2d 1152,

1167 (Pa. Super. Ct. 1999), *rev'd on other grounds,* 777 A.2d 442 (Pa. 2001).  To set forth a

claim for false advertising under these provisions of the UTPCPL, a plaintiff must allege: (1) "a

-22-

defendant's representation is false"; (2) "it actually deceives or has a tendency to deceive"; and (3) "the representation is likely to make a difference in the purchasing decision." *Fay v. Erie Ins. Group*, 723 A.2d 712, 714 (Pa. Super. Ct. 1999) (listing elements for violation of § 201-2(4)(v)); *see Weinberg*, 740 A.2d at 1167 (stating same elements apply to § 201-2(4)(ix)).

Here, plaintiffs have presented no facts regarding defendants' production of any false advertising. Instead, plaintiffs allege that defendants misrepresented the benefits, fees, and amounts owed concerning the loan and misrepresented the scheduled monthly payments under the repayment plan. Because individual employees or agents of defendants made these representations, they do not qualify as advertising and cannot constitute a violation of the UTPCPL's false advertising prohibition. *See Thompson v. The Glenmede Trust Co.*, No. 04428, 2003 WL 1848011, at *1 (Pa. Ct. Com. Pl. Philadelphia County Feb. 18, 2003) ("Individual representations made by [defendants] upon which [p]laintiffs allegedly relied do not constitute 'advertising' as intended by the UTPCPL."). For plaintiffs' claim under § 201-2(4)(ix), plaintiffs have also failed to allege that defendants intentionally engaged in false advertising. *See Karlsson*, 942 F. Supp. at 1023 (noting that § 201-2(4)(ix) requires element of intent). Because plaintiffs do not allege the elements of a false advertising claim under subsections (v) or (ix), plaintiffs have failed to set forth a claim on which this court can grant relief.

Similarly, plaintiffs' two other UTPCPL claims concerning misrepresentations in a legal proceeding and rescission fail. Plaintiffs claim that defendants misrepresented the characteristics of the debt in the course of a legal proceeding in violation of 73 Pa. Stat. Ann. § 201-3.1 and 37

-23-

Pa. Code § 303.3(3).[9]  Plaintiffs' complaint contains no allegation whatsoever about any legal proceeding to which the above UTPCPL claim relates.  Without any pertinent underlying facts, plaintiffs have failed to state a claim for which the court can grant relief.  Plaintiffs further claim that defendants failed to provide "a lawful and accurate notice of the right to cancel" the loan in violation of 73 Pa. Stat. Ann. § 201-7.  This section applies where "goods or services having a sale price of twenty-five dollars ($25) or more are sold or contracted to be sold to a buyer, as a result of, or in connection with, a contact with or call on the buyer or resident *at his residence* either in person or by telephone."  73 Pa. Stat. Ann. § 201-7(a) (emphasis added).[10]  Plaintiffs make no allegation that any defendant contacted plaintiffs at their residence about the initial loan or the repayment plan.  Without this allegation, plaintiffs have failed to set forth a claim for rescission under § 201-7(a).  *See In re Lewis*, 290 B.R. at 554 ("Without evidence of other contacts—made by the seller—at the buyer's residence, a single contact by the buyer from his or her residence will not bring a transaction into the scope of Section 201-7.")

### b.      Lack of justifiable reliance and causation

Plaintiffs' UTPCPL claims concerning misrepresentation of services, subsection (ii), and misrepresentation of association, subsection (iii), both lack allegations of justifiable reliance and

_____

[9]  The court notes that 73 Pa. Stat. Ann. § 201-3.1 enables the Pennsylvania Attorney General to "adopt, after public hearing, such rules and regulations as may be necessary for the enforcement and administration of [the UTPCPL]" and 37 Pa. Code § 303.3(3) is currently reserved for future regulations, but contains no substantive provisions to date.

[10]  The court will assume, without deciding, that this section of the UTPCPL applies to the loan and the repayment plan at issue here.  *Compare In re Lewis*, 290 B.R. 541, 554 (Bankr. E.D. Pa. 2003) (applying § 201-7 to home mortgage loan transaction) *with St. Hill v. Tribeca Lending Corp.*, Civ. Action No. 07-5300, slip op. at 6 n.4, 2009 WL 691977, at *3 n.4 (E.D. Pa. Mar. 17, 2009) (noting that § 201-7(a) "specifically does not apply to real property").

causation, elements essential to any UTPCPL claim.  Plaintiffs allege that defendants "[c]aused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services," 73 Pa. Stat. Ann. § 201-2(4)(ii), and as to the "affiliation, connection or association with, or certification by, another," *id.* § 201-2(4)(iii).  More precisely, plaintiffs allege that following Home Loan's acquisition of, or merger with, First Franklin, defendants caused plaintiffs confusion about who provided servicing of their loan and later who sponsored the repayment plan.  This allegation appears to match with plaintiffs' claim under § 201-2(4)(ii).  Plaintiffs also allege that in their communications with defendants, plaintiffs experienced confusion, which included: not knowing to which defendant's representative they were speaking, speaking with a different representative each time they called defendants, speaking with a different department each time they called defendants, and receiving conflicting information from these different representatives and departments.  This allegation appears to match with plaintiffs' claim under § 201-2(4)(iii).

These specific allegations of UTPCPL violations do not suffice without pleading justifiable reliance and causation.  Even reading the complaint liberally, the court cannot find any allegation that plaintiffs altered their behavior due to the confusion that allegedly resulted from defendants' conduct.  More importantly, the complaint makes no allegation that this alleged confusion caused any of plaintiffs' alleged injuries.  Because plaintiffs' claims under § 201-2(4)(ii), (iii) lack allegations of justifiable reliance and causation, essential elements of any UTPCPL claim, plaintiffs have not set forth claims under these subsections for which this court can grant relief.

      c.       **Fraudulent and deceptive conduct claim under UTPCPL**

**catchall provision**

Plaintiffs claim that defendants "engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding" pursuant to the catchall provision of the UTPCPL.  *See* 73 Pa. Stat. Ann. § 201-2(4)(xxi) (including, in list of unfair practices, "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding").  Defendants argue that a claim under the catchall provision requires proving the elements of common law fraud and, consequently, pleading the claim with particularity as required by Rule 9(b), both of which plaintiffs failed to do.  Plaintiffs appear to argue that a claim under the catch-all provision of the UTPCPL no longer requires pleading the elements of fraud and thus the particularity requirement of Rule 9(b) does not apply.

**i.    Common law fraud elements not required**

Previously, "a plaintiff had to prove the elements of common law fraud . . . to state a claim under the catchall provision" of the UTPCPL.  *Commonwealth v. Percudani*, 825 A.2d 743, 746 (Pa. Commw. Ct. 2003) (noting that originally provision prohibited "other fraudulent conduct").  In 1996, amendments to the law added "deceptive conduct" to the catchall provision. 1996 Pa. Laws 906, 908.  "After the amendment . . ., courts have construed the provision to prohibit either deceptive or fraudulent conduct."  *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517, 548 (D.N.J. 2004).

Pennsylvania appellate courts split on whether to assert a UTPCPL violation under the catchall provision a plaintiff needs to allege the elements of common law fraud.  *Compare Percudani*, 825 A.2d at 747 (concluding that 1996 amendments removed need to prove common law fraud under catchall provision) *with Booze v. Allstate Ins. Co.*, 750 A.2d 877, 880 (Pa. Super.

-26-

Ct. 2000) ("[T]o state a claim under the catchall provision . . . , a plaintiff must prove the elements of common law fraud."), *appeal denied*, 766 A.2d 1242 (Pa. 2000). Similarly, this court has not reached consensus. *Compare In re Fisher*, 320 B.R. 52, 71 (Bankr. E.D. Pa. 2005) (determining that "word 'deceptive' within the catchall provision necessitates a less restrictive standard than proof of fraud") *with Rock v. Voshell*, 397 F. Supp. 2d 616, 622 (E.D. Pa. 2005) (requiring plaintiff asserting UTPCPL claim under catchall provision to prove common law elements of fraud), *reconsideration denied*, No. Civ. A. 05-1468, 2005 WL 3557841 (E.D. Pa. Dec. 29, 2005). "The Pennsylvania Supreme Court has not yet addressed this issue." *Chiles v. Ameriquest Mortgage Co.*, 551 F. Supp. 2d 393, 399 (E.D. Pa. 2008).

In adjudicating a state law claim, the court must "apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us." *Gares v. Willingboro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996). Where the highest court provides insufficient guidance, not only should the court look to appellate decisions, *id.*, but the court also has "a duty . . . to ascertain from all the available data what the state law is," *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940). Thus, the court can disregard a state appellate decision if the court finds "persuasive data that the highest court of the state would decide otherwise." *Id.*

In predicting whether the Pennsylvania Supreme Court would require a plaintiff to prove the elements of common law fraud to sustain a claim under the catchall provision, four factors provide guidance. First, because the 1996 amendment added a prohibition of deceptive conduct to the existing prohibition of fraudulent conduct, requiring proof of fraud for merely "deceptive" conduct would render the added term "deceptive" superfluous, contrary to principles of statutory

construction. *See Commonwealth use of Pandolfo v. Pavia Co.*, 113 A.2d 224, 226 (Pa. 1955)

(noting that revised statutory language demands "different" construction of statute); *Berger v.*

*Rinaldi*, 651 A.2d 553, 557 (Pa. 1994) (stating that because legislature presumed to avoid

"surplusage[,] . . . whenever possible, courts must construe a statute so as to give effect to every

word contained therein"), *appeal denied*, 664 A.2d 971 (Pa. 1995).  Second, removing the

common law fraud requirement comports with the Pennsylvania Supreme Court's directive to

construe the statute liberally.  *Creamer*, 329 A.2d at 817.  Third, of those federal and state cases

that continue to require proof of the elements of fraud, for whatever reason the courts cite cases

pre-dating the 1996 amendments or do not discuss the amendments in any depth or at all.  *See*

*Plaum*, 2004 WL 2980415, at *3 (failing to mention of 1996 amendments, but calling

requirement of proof of fraud "well-established"); *Piper v. Am. Nat'l Life Ins. Co. of Tex.*, 228 F.

Supp. 2d 553, 560 (M.D. Pa. 2002) (citing *Prime Meats v. Yochim*, 619 A.2d 769, 773 (Pa.

Super. Ct. 1993), *appeal denied*, 646 A.2d 1180 (Pa. 1994) for proposition that claim under §

201-2(4)(xxi) requires proof of common law elements of fraud); *Booze*, 750 A.2d at 880

(adhering to proof of fraud requirement, but recognizing 1996 amendments).  Fourth, in many

cases in this circuit, courts have determined that a plaintiff's claim for deceptive conduct under

the catchall provision does not require alleging the elements of common law fraud.  *See Chiles*,

551 F. Supp. 2d at 399; *Flores v. Shapiro & Kreisman*, 246 F. Supp. 2d 427, 432 (E.D. Pa.

2002); *In re Figard*, 382 B.R. 695, 716 (Bankr. W.D. Pa. 2008).

       Consequently, this court concludes that for a claim under the catchall provision of the

UTPCPL, if a plaintiff alleges deceptive conduct, a plaintiff need not allege the elements of

common law fraud, but, conversely, must do so if a plaintiff alleges fraudulent conduct.  *See*

*Chiles*, 551 F. Supp. 2d at 399 ("[A]ll elements of common law fraud need not be proven if

[p]laintiff alleges deceptive conduct.").  Here, for plaintiffs' claim under the UTPCPL's catchall

provision, to the extent plaintiffs allege deceptive conduct, plaintiffs do not need to allege the

elements of common law fraud or, as a result, meet Rule 9(b)'s particularity requirement, which

applies only to claims of fraud.  *See* Fed. R. Civ. P. 9(b) (requiring party to "state with

particularity the circumstances constituting fraud or mistake"); *Christopher v. First Mut. Corp.*,

No. Civ.A. 05-01149, 2006 WL 166566, at *3 (E.D. Pa. Jan. 20, 2006) ("If a plaintiff alleges

deceptive conduct under the UTPCPL, however, he need not meet the traditional heightened

pleading standard.").  Consequently, the court cannot grant defendants' motion to dismiss

plaintiffs' claim of deceptive conduct under the UTPCPL's catchall provision on the basis of

plaintiffs' failure to meet Rule 9(b)'s standard.[11]

### ii.    Remaining elements of UTPCPL catchall claim

Nevertheless, plaintiffs must set forth the other required elements for a claim of deceptive

conduct under the catchall provision of UTPCPL.  First, a plaintiff must allege facts showing a

"deceptive act," that is "conduct that is likely to deceive a consumer acting reasonably under

---

[11]  Of course, to the extent plaintiffs allege a violation of the catchall provision on the basis of fraudulent conduct, plaintiffs must plead the elements of common law fraud and Rule 9(b)'s particularity requirement does apply.  *See Christopher*, 2006 WL 166566, at *3 ("If a plaintiff alleges fraud under the UTPCPL [catchall provision], he must still plead all the elements of common law fraud."); *Cheatle v. Katz*, No. Civ. A. 02-4405, 2003 WL 21250583, at *8 (E.D. Pa. Apr. 1, 2003) (requiring compliance with Rule 9(b)'s particularity requirement for allegations of fraudulent conduct under UTPCPL catchall provision).  As will be explained in a later section, plaintiffs have pleaded the elements of common law fraud in accord with Rule 9(b) with respect to defendants' conduct regarding the repayment plan, but not the loan or plaintiffs' confusion about defendants' identity.  *See infra* Part III.B.4.  Therefore, plaintiffs have a viable claim for fraudulent conduct under the catchall provision of the UTPCPL only on the basis of the repayment plan.

similar circumstances."  Black's Law Dictionary 455 (8th ed. 2004); *see also In re Patterson*,

263 B.R. at 94 (defining deceptive act as "'the act of intentionally giving a false impression' or 'a

tort arising from a false representation made knowingly or recklessly with the intent that another

person should detrimentally rely on it'") (quoting Black's Law Dictionary 413 (7th ed. 1999)).

Next, the plaintiff must allege justifiable reliance, in other words "that he justifiably bought the

product in the first place (or engaged in some other detrimental activity) because of the

[defendants'] misrepresentation" or deceptive conduct.  *Hunt*, 538 F.3d at 223 n.14.  Finally, the

plaintiff must allege that this justifiable reliance caused ascertainable loss.  73 Pa. Stat. Ann. §

201-9.1(a).

Plaintiffs' allegations of deceptive conduct concern the loan, defendants' representation

of their identity, and the repayment plan.  As noted earlier, plaintiffs allege a series of

misrepresentations concerning the loan, in particular the benefits, fees, terms, and amounts due

with respect to the loan.  (*See* TAC ¶¶ 41, 51.)  Additionally, plaintiffs allege that defendants

confused plaintiffs as to the identity of both the business entity and the particular department

with whom plaintiffs spoke whenever plaintiffs called defendants about the loan or repayment

plan.  (*Id.* ¶¶ 21-25.)  Finally, plaintiffs allege that defendants promised monthly payments of

$700 for a fixed period under the repayment plan, but instead varied the amount due each month

and did not end the repayment plan at the time promised, despite plaintiffs' compliance with the

plan.  (*Id.* ¶ 39.)

As to the loan, plaintiffs merely allege a list of misrepresentations.  Plaintiffs do not even

describe the actual terms, conditions, or characteristics of the loan and in what respect defendants

misrepresented these aspects of the loan.  Without these allegations, plaintiffs fail to plead

justifiable reliance as they simply do not set forth "how [their] knowledge [of the loan's actual

terms] would have changed [their] conduct."  *Hunt v. U.S. Tobacco Co.*, 538 F.3d at 227.

Plaintiffs similarly fail to plead justifiable reliance regarding their allegations about confusion of

defendants' identity following the acquisition or merger of Home Loan and First Franklin.  To

the extent their UTPCPL catchall claim of deceptive conduct relies on alleged misrepresentations

of the loan terms or the identity of defendants, the claim must fail.

On the other hand, plaintiffs have alleged a viable claim on the basis of

misrepresentations involving the repayment plan.  Taking all reasonable inferences in plaintiffs'

favor, the court finds that given the dire financial circumstances that allegedly drove plaintiffs to

enter the repayment plan, plaintiffs relied on defendants' representation that payments under the

plan would remain at $700.  Variable payments would have left plaintiffs in the same position as

before the repayment plan—unable to pay their mortgage.  Thus, plaintiffs allege that defendants'

promises led them to accept the repayment plan and not seek alternative solutions to their

financial troubles.  In doing so, plaintiffs have "alleged [sufficiently] that [defendants'] deception

induced [them] to [accept the repayment plan] or engage in any other detrimental activity."  *Id.*

Plaintiffs have also alleged a series of financial and other losses that resulted from their reliance

on defendants' statements about the repayment plan's fixed payment amounts and payment

period.  On the basis of defendants' misrepresentations about the repayment plan, plaintiffs have

set forth the required elements for a viable claim of deceptive conduct under the catchall

provision of the UTPCPL, 73 Pa. Stat. Ann. § 201-2(4)(xxi).

### d.    Per se violations

Plaintiffs argue that "TILA and FCEUA violations are per se UTPCPL violative" and

defendants did not address this argument or the underlying allegations from the complaint.

Under Pennsylvania law, "per se violations of the UTPCPL should be expressly provided for in

the underlying statute." *Abrams v. Toyota Motor Credit Corp.*, No. Control 071049, 2001 WL

1807357, at *8 (Pa. Ct. Com. Pl. Dec. 5, 2001) (citing Pennsylvania statutes that constitute

UTPCPL violations by express provision); *see Christopher v. First Mut. Corp.*, Civ. Act. Nos.

05-0115, 05-0149, 2008 WL 1815300, at *14 (E.D. Pa. Apr. 22, 2008) (noting Pennsylvania

statutes that explicitly provide that a violation of the statute constitutes a violation of the

UTPCPL).  "A TILA violation is not a per se violation of the UTPCPL." *Kuenzi v. Eurosport

Cycles, Inc.*, Civ. Action No. 08-3906, 2009 WL 1872599, at *5 (E.D. Pa. June 30, 2009); *see

Christopher*, 2008 WL 1815300, at *14 ("[T]he statutory language of . . . TILA . . . does not

provide that a violation of th[is] statute[] is a violation of the Pennsylvania UTPCPL.").  *But see

In re Meyer*, 379 B.R. 529, 554 (Bankr. E.D. Pa. 2007) (finding TILA violation is "ipso facto a

violation of UDAP [predecessor to the UTPCPL]"), *reconsideration denied*, Bankruptcy No.

06-13841 SR, 2008 WL 474238 (Bankr. E.D. Pa. Feb. 20, 2008).  Therefore, plaintiffs cannot set

forth a UTPCPL claim based on an underlying TILA violation.

On the other hand, the FCEUA expressly provides that a violation of that statute "shall

constitute a violation of . . . the Unfair Trade Practices and Consumer Protection Law."  73 Pa.

Stat. Ann. § 2270.5(a).  As explained above, plaintiffs allege a viable claim for relief under the

FCUEA.  As a result, on this basis, plaintiffs have set forth a claim under UTPCPL.[12]

_____

[12]  Plaintiffs also make several allegations redundant of the claims already addressed
above, (*see* TAC ¶ 64, h. (per se violations of UTPCPL), i. (false advertising under subsection
(v))), which the court need not address.  Further, plaintiff alleges that "[d]efendants
misrepresented the characteristics or benefits of the loan," (TAC ¶ 64, j.), but fail to identify a
particular subsection of the UTPCPL as the basis of this claim.  Nevertheless, the court addressed

-32-

### 4.      Common law fraud

Plaintiffs allege that defendants' misrepresentations also constituted common law fraud.

Defendants argue that plaintiffs do not plead justifiable reliance, an essential element, and

otherwise fail to plead the claim with "the particularity required" by Rule 9(b).  Plaintiffs state

that their common law fraud claim requires an analysis "distinct" from a UTPCPL claim.  Under

Pennsylvania law, to maintain a claim for fraud a plaintiff must plead: "(1) a representation; (2)

which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or

recklessness as to whether it is true or false; (4) with the intent of misleading another into relying

on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was

proximately caused by the reliance."  *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).

Rule 9(b) applies whenever a party is "alleging fraud."  Fed. R. Civ. P. 9(b).  This

requirement "place[s] the defendants on notice of the precise misconduct with which they are

charged, and . . . safeguard[s] defendants against spurious charges of immoral and fraudulent

behavior."  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.

1984).  A plaintiff can satisfy the Rule's particularity requirement with allegations of the date,

time, or place of the fraud at issue.  *Id.*  A plaintiff can also "use alternative means of injecting

precision and some measure of substantiation into their allegations of fraud," including setting

forth "the nature and subject of the alleged misrepresentation."  *Id.* (listing each particular

fraudulent transaction and supplying exhibits for each incident of fraud).

Plaintiffs' fraud claim involves the same alleged misrepresentations as those pertaining to

_____

plaintiffs' claims of misrepresentations about the loan in Part III.B.3.c.ii. and need not do so
again.

the claim under the UTPCPL's catchall provision, specifically those involving the loan, defendants' identity, and the repayment plan.  As explained above concerning deceptive conduct under the UTPCPL's catchall provision, claims pertaining to the loan and defendants' identity lack sufficient factual allegations of justifiable reliance.  *See supra* Part III.B.3.c.ii.  Because justifiable reliance is an essential element of any fraud claim, plaintiffs' common law fraud claim in these instances lacks sufficient factual allegations.

On the other hand, plaintiffs plead the elements of fraud and satisfy the particularity requirement with respect to their allegations concerning defendants' misrepresentations about the repayment plan.  Plaintiffs allege: their need for the repayment plan, the terms of the plan as represented by defendants, when the parties created the plan, plaintiffs' compliance with that plan, and defendants' refusal to honor those terms.  Taking all reasonable inferences from these allegations in plaintiffs' favor, plaintiffs allege a material misrepresentation that defendants made knowingly with intent to deceive, that plaintiffs justifiably relied on, and that caused plaintiffs' loss.  Moreover, these allegations leave no confusion as to the nature of defendants' misrepresentations about the repayment plan and the exact losses plaintiffs suffered.  Because plaintiffs set forth the required elements of a claim for fraud in such detail, the claim has sufficient supporting factual allegations and satisfies Rule 9(b)'s particularity requirement. Consequently, the court cannot grant defendants' motion to dismiss on those bases.

## IV.    Conclusion

The court will grant in part and deny in part defendants' motion to dismiss.  Because plaintiffs' only viable claim for rescission under the TILA arises out of defendants' alleged failure to provide the required number of disclosure statements, the court will grant defendants'

motion to dismiss plaintiffs' other TILA rescission claims.  Plaintiffs have set forth a viable

claim under the FCEUA; consequently, the court will deny defendants' motion as to this entire

claim.  As to plaintiffs' UTPCPL claims, all of plaintiffs' claims fail and will be dismissed, but

for (1) the claim based on a violation of the FCEUA and (2) the claim based on fraudulent and

deceptive conduct in violation of the catchall provision, 73 Pa. Stat. Ann. § 201-2(4)(xxi),

relating to the repayment plan.  Finally, because plaintiffs have not set forth viable claims for

common law fraud, but for the claim relating to the repayment plan, the court will grant

defendants' motion as to those failed claims and dismiss accordingly.

        The current complaint represents plaintiffs' fifth attempt to set forth claims arising out of

the incidents at issue (with the original complaint having been filed on October 22, 2007 and the

plaintiffs having ample opportunity for discovery in the sixteen intervening months).  As a result,

the court concludes that any further amendments would prove futile and inequitable and will

dismiss those claims as set forth above with prejudice.  *See Alston v. Parker*, 363 F.3d 229, 235

(3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit

a curative amendment, unless an amendment would be inequitable or futile.").